```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANDREW CIRINCIONE,

                    Plaintiff,

         -against-                      MEMORANDUM AND ORDER
                                        07-CV-2207 (JS)(ARL)

PLUMBERS LOCAL UNION NO. 200 PENSION
FUND, and BOARD OF TRUSTEES OF THE
PLUMBERS LOCAL UNION NO. 200 PENSION
FUND,

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:     Thomas Ricotta, Esq.
                   Leeds, Morelli & Brown, P.C.
                   One Old Country Road, Suite 347
                   Carle Place, NY 11514

For Defendants:    Robert T. McGovern, Esq.
                   Archer, Byington, Glennon & Levine, LLP
                   425 Broad Hollow Road, Suite 405
                   P.O. Box 9064
                   Melville, NY 11747-9064
```

SEYBERT, District Judge:

Pending before the Court is Defendant Plumber's Local Union No. 200 Pension Fund's (the "Fund") and Defendant Board of Trustees of the Plumber's Local Union No. 200 Pension Fund's (the "Board") (collectively the "Defendants") motion for summary judgment. For the reasons discussed below, Defendants' motion is GRANTED in part, and DENIED in part.

BACKGROUND

Defendant Plumbers Local Union No. 200 Pension Fund is an employee pension plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §

1002(1). (Defs.' R. 56.1 Stmt. ¶ 1.) Defendant Board of the Plumbers Local Union No. 200 Pension Fund is the Fund's fiduciary and administers the Pension Plan ("Plan"). (Id. ¶ 2.) The Plan provides pension benefits to retired participants. Plaintiff Andrew Cirincione ("Cirincione") is a Plan participant, and began receiving early benefits in or about April 1999. (Id. ¶¶ 3, 10.)

The crux of this dispute surrounds the meaning of the Plan terms. Under Section V, subsection F, the Plan states, in part:

- pensioners who are under age 65[1] will have their benefits suspended for any month they are re-employed for one or more hours of service in the industry, trade or craft **or** geographic area (emphasis supplied);[2]

- pensioners who accept employment within that criteria must notify the pension fund of their employment; and

- if benefits are paid in any month for which they should have been suspended, the overpayment will be recovered by deductions from future monthly payments.

---

[1] Plaintiff was born in 1943, and was below the age of 65 during the relevant years.

[2] Usage of the word "or" signifies that the contemplated employment need not be within the industry, trade or craft. Rather, **any** employment within the geographic area seems to be within the terms of this provision. So Cirincione needed to report any employment to the Fund. Even if this "or" is read as "and," Cirincione admits that the company for which he served as President and owner is within the same industry, or trade or craft as his previous employer. (Pl.'s 2d Am. R. 56.1 Counter-Stmt. ¶ 4.)

2

(Defs.' Ex. A, § V(F).)  The contract defines the terms "industry," "trade or craft," and "geographic area," but leaves the term "re-employed" undefined.  (Id.)  The Plan also grants the Board of Trustees exclusive right to interpret the Plan to decide any matters arising in connection with Plan administration.  (Id. § VII(c).)

County Pneumatic Controls, Inc. ("CPC") operates a business that is in the same industry, or trade or craft, as Plaintiff's previous employer. (Defs.' R. 56.1 Stmt. ¶ 4; Pl.'s 2d Am. R. 56.1 Counter-Stmt. ¶ 4.)  CPC is also located within the same geographic area or jurisdiction.  (Id.)  During the years 1999-2007, Cirincione served as CPC's president, and from 1999 through the present, he also served as its owner.  (Pl.'s 2d Am. R. 56.1 Counter-Stmt. ¶ 5.)  Despite this involvement, on or about June 30, 2006, Cirincione executed and submitted to the Fund a questionnaire in which he certified that he was not employed either in the plumbing trade or industry, or outside the plumbing trade or industry.  (Defs.' R. 56.1 Stmt. ¶ 17.)

The Plan learned of Cirincione's position as CPC's president and owner after the Suffolk County District Attorney investigated Cirincione and CPC for failing to pay employees prevailing wages, and submitting fraudulent certified payroll records in violation of New York State Labor Law.  (Id. ¶¶ 19-24.)  Subsequently, on March 10, 2006, Cirincione pleaded guilty in

3

County Court in Suffolk County to a violation of New York Penal Law § 170.10, Falsifying a Business Record in the First Degree (Class E Felony), and CPC pleaded guilty to a violation of New York Penal Law § 170.05, Falsifying a Business Record in the Second Degree. (Id. ¶ 23.) In addition, in a Nassau County criminal proceeding, Cirincione and CPC pleaded guilty to a violation of New York Penal Law § 170.35, Offering a False Instrument for Filing in the First Degree (Class E Felony). (Id. ¶ 26.)

By letter dated November 28, 2006, Fund Director Frank Pellegrino informed Cirincione of the Fund's decision to suspend his monthly pension benefit. (Id. ¶ 27.) Thereafter, following an appeal to the Fund's Board of Trustees (Id. ¶ 28), Cirincione commenced this suit to restore his pension benefits (see generally Compl.). The Fund counterclaimed and demanded that Cirincione reimburse the Fund for the amount of pension benefits he received, totaling $70,265.92. (See 2d Am. Ans. and Countercl.) Defendants moved for summary judgment on Plaintiff's claims for benefits, and their counterclaims for restitution on November 12, 2008.

## DISCUSSION

I. Defendants' Motion for Summary Judgment

A. Rule 56: Standard of Review

A party seeking summary judgment has the burden to establish that "there is no genuine dispute concerning any material facts," and, therefore, it "is entitled to judgment as a matter of

4

law."  Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp., 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee, 109 F.3d at 134.

Once the moving party establishes its initial burden, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)).  Mere conclusory allegations, speculation, or conjecture will not avail a party opposing summary judgment.  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996), and "[f]actual disputes that are

irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 247 (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)).

B. ERISA

"ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 108, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146, 105 S. Ct. 3085, 3092, 87 L. Ed. 2d 96 (1985)). Plaintiff's suit alleges two ERISA violations: (1) a violation of 29 U.S.C. § 1132(1)(B) [sic], and (2) a violation of 29 U.S.C. § 1104(a). Section 1132(a)(1)(B)[3], [ERISA § 502(a)(1)(B)], authorizes civil suits by a plan participant or beneficiary, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B) (2009). Section 1104(a), [ERISA § 404(a)], provides the criteria for the prudent man standard, and reads:

> (a) Prudent man standard of care
>
> (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–

---

[3] Since "§ 1132(1)(B)" does not exist, the Court presumes that this is the section that Plaintiff intended, and accidentally omitted the "(a)".

6

> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> . . .
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C.A. § 1104 (a) (2009).

1. The Trustee's Decision to Suspend Cirincione's Pension

In Firestone, the Supreme Court held that where a pension plan provides "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then courts review their decisions under the arbitrary and capricious standard. Firestone, 489 U.S. at 115; see also O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 111-12 (2d Cir. 1995) (where a "'plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' . . . the [district] courts will not disturb the administrator's decision unless it is arbitrary and capricious." (citations omitted)).

7

Where a pension plan lacks this discretionary authority, courts review decisions de novo. Firestone, 489 U.S. at 115.

The pension plan at issue here grants the Board the "exclusive right to interpret the Plan and to decide any matters arising thereunder in connection with the administration of the Plan." (Defs.' Ex. A, § VII(c).) Consequently, this Court's inquiry is whether the Board acted arbitrarily and capriciously in suspending Plaintiff's pension benefits. How the Court would have decided this issue de novo – whether Plaintiff was entitled to keep his pension benefits under the plan – is irrelevant. See, e.g., Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995) (noting that, when using the arbitrary and capricious standard, the scope of review is narrow, and the court may not substitute its judgment as if considering the issue anew); O'Shea, 55 F.3d at 112 (narrow scope of review). The Court may overturn the Board's decision only if "it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995) (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." O'Shea, 55 F.3d at 112 (quoting Miles v. New York State Teamsters Conf. Pension and Ret. Fund Emp. Pension Ben. Plan, 698

F.2d 593, 601 (2d Cir. 1983)). But "[w]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." Miles, 698 F.2d at 599.

The Pension Plan of Plumbers Local No. 200 Pension Fund requires that the pension be suspended in certain instances of "re-employment." Section V(F), of the Pension Plan, entitled "Re-Employment of Pensioners," lists certain situations where a pensioner's re-employment requires the suspension of his or her benefits. This section reads, in part:

- pensioners who are under age 65 will have their benefits suspended for any month they are re-employed for one or more hours of service in the industry, trade or craft, or geographic area;

- pensioners who accept employment within that criteria must notify the pension fund of their employment; and

- if benefits are paid in any month for which they should have been suspended, the overpayment will be recovered by deductions from future monthly payments.

(Defs.' Ex. A, § V(F).) The contract incorporates the definitions from 29 C.F.R. § 2530.203-3, and thus defines the terms "industry," "trade or craft," and "geographic area." But the Plan leaves the key term "re-employed" undefined.

9

Based on the evidence, there are no disputes of material fact as to whether the Board's decision – that Plaintiff was re-employed and not entitled to benefits – was arbitrary and capricious. It was not. Plaintiff admits that CPC operates a business in the industry, trade or craft, or geographic area within the jurisdiction of the Fund, and that he was its president and owner. (Pl.'s 2d Am. R. 56.1 Counter-Stmt. ¶ 4). Instead, Plaintiff argues only that he is not an "employee" as defined within § V(F) of the Plan. Plaintiff is essentially arguing that the term "employee" is ambiguous, and any determination on whether he is an employee must be left to a jury.[4] Plaintiff's argument misses the point. The Court is not tasked with deciding if Plaintiff was an "employee" within the Plan's terms.[5] Indeed, the

---

[4] Contra proferentem is a rule that states "that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443-44 (2d Cir. 1995) (quoting O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc., 37 F.3d 55, 61 (2d Cir. 1994)). But this rule is limited to de novo reviews of ERISA decisions. Pagan, 52 F.3d at 443-44. Since this Court's review of the Board's decision is pursuant to the highly deferential arbitrary and capricious standard, contra proferentum is inapplicable.

[5] Plaintiff argues: "under no circumstances can this Court determine as a matter of law that he was an employee, as such a determination would have to be left for a jury to decide." (Pl.'s Mem. L. 9). The Court cites this statement as a prime example of Plaintiff's erroneous argument. As repeatedly reiterated above, this Court's role is not to decide, as a matter of law, whether Plaintiff is an employee, was re-employed, or should have his pension suspended. The Court's only burden is to determine whether the Board acted arbitrarily and capriciously in

term "employee" is never used in the relevant clauses of § V(F). Rather, this Court must decide whether the Board's determination that Plaintiff was "re-employed," was arbitrary and capricious. It was not.

The Plan does not define the term "re-employed," and, unlike other terms, it is not incorporated by reference from the Code of Federal Regulations. Further, the Plan does not state a pensioner must be re-employed <u>as an employee</u>. Rather, benefits are suspended when a pensioner performs a "<u>service</u>" in the same industry, trade or craft, or geographic area. (Defs.' Ex. A, § V(F).) (emphasis supplied). And while the term "service" is not defined, its plain meaning connotes a broader definition of what would cause the suspension of benefits, – beyond being an "employee." Since the Board has the "exclusive right to interpret the Plan and to decide any matters arising thereunder in connection with the administration of the Plan," it is up to the Board to define these terms. It would seem odd that the Plan would allow a pensioner to own and serve as an officer of another business in the same industry, trade or craft, and geographic area, make several hundred thousand dollars, and keep his or her pension, but would not allow service as an entry-level worker, making a small stipend, while still keeping those same benefits. That appears to be the

---

deciding Plaintiff was re-employed. If it did not, then summary judgment is appropriate, no matter what the Court would determine <u>de novo</u>.

11

decision reached by the Board.  It is thus not arbitrary and capricious for the Board to define the term "re-employed" as including the services of an owner and president of a company – one who made over $300,000 in W-2 wages, signed checks on behalf of the company, and had the authority to bind the company.

Plaintiff admits several facts showing that the Board's decision was neither arbitrary nor capricious.  For example, Plaintiff admits that he had a role in CPC (albeit "titular") as its owner and president, signed checks, and was paid W-2 wages – over $300,000 per year.  (Pl.'s 2d. Am. R. 56 Counter-Stmt ¶ 16.) And in his criminal plea agreement, Plaintiff represented that he was "the owner and President of COUNTY PNEUMATIC CONTROLS INC. with full authority to so bind the corporation." (Defs.' Ex. E, 4.)  At the very least, these statements are judicial admissions, if not grounds for collateral estoppel, and should be accorded due weight. See United States v. Andreadis, 238 F. Supp. 802, 804 (E.D.N.Y. 1965) (admitting statements made in a plea as admissions); see, e.g., United States v. Hammon, 277 F. App'x 560, 568 (6th Cir. 2008) (discussing when a plea agreement acts to collaterally estop the relitigation of issues in a subsequent civil suit).  These facts lead this Court to determine that the Board did not act arbitrarily and capriciously in determining Plaintiff was re-employed.  Therefore, the Court grants Defendants summary judgment on this issue.

## 2. Breach of Fiduciary Duty Claim

Plaintiff's second cause of action alleges that Defendants breached their ERISA duty of care. See 29 U.S.C. §§ 1104, 1109.[6] For the reasons set forth below, this Court grants Defendants' summary judgment on this claim.

Other plaintiffs have filed suits under § 1109 (through § 1132(a)(2)), for a breach of fiduciary duty, as an alternative to a claim for benefits under § 1132(a)(1). But Russell forecloses this sort of end run. There, the Supreme Court held that § 1109, [ERISA § 409], concerns a misuse of plan assets, and provides remedies that protect the entire plan, rather than individual beneficiaries. Russell, 473 U.S. at 142. The Court went on to state: "A fair contextual reading of the statute [§ 409] makes it abundantly clear that its draftsmen were primarily concerned with

---

[6] Plaintiff erroneously filed his second cause of action under 29 U.S.C. § 1104(a), [ERISA § 404(a)]. Section 1104 outlines the ERISA fiduciary duties, with § 1104(a) as the duty of care. It does not, however, provide for liability for breaches of this duty of care. Section 1109, entitled "Liability for Breach of Fiduciary Duty," provides liability for a breach of those duties. See Del Rio v. Toledo Edison Co., 130 F. App'x 746, 750 n.2 (6th Cir. 2005) ("Though § 404 establishes the fiduciary duties under ERISA, § 409 is the only provision which provides for liability for breach of those duties." (emphasis in original)); Jeffrey Mamorsky, Emp. Benefits Handbook § 36:46 (2009) ("Section 409 is the enforcement provision for ERISA's basic Section 404 fiduciary rules."). And § 1132, [ERISA § 502], is the enforcement provision for § 1109. Russell, 473 U.S. at 142 n.9 ("§ 502(a)(2) [is] the enforcement provision for § 409 . . . ."). Despite Plaintiff's erroneous pleading, this Court will evaluate whether summary judgment is appropriate, considering Plaintiff's case as if he had filed using the proper sections.

the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Id.

Plaintiff seeks to distinguish Russell from his case by claiming that his suit is filed under § 1104, where in Russell, the Supreme Court was analyzing § 1109. (Pl.'s Mem. L. 13). An almost identical argument was rejected by the Sixth Circuit in 2005. See Del Rio v. Toledo Edison Co., 130 F. App'x 746, 750 n.2 (6th Cir. 2005) ("In her brief, Del Rio attempts to distinguish her case from Tregoning by arguing that its holding pertained to ERISA § 409, 29 U.S.C. § 1109, while she is seeking redress for violations of ERISA § 404, 29 U.S.C. § 1104. This argument is wholly without merit. Though § 404 establishes the fiduciary duties under ERISA, § 409 is the only provision which provides for liability for breach of those duties." (citation to the Del Rio record omitted)). Thus, despite Plaintiff's erroneous choice of sections, he should have filed under § 1109, and Russell controls.

A claim for a breach of § 1109 must be brought through § 1132(a)(2), [ERISA § 502(a)(2)]. 29 U.S.C. § 1132(a)(2) (2009).[7] And Russell precludes a claim for a breach of fiduciary duty under § 1132(a)(2) that seeks recovery for an individual, and not the

---

[7] 29 U.S.C. § 1132(a)(2) reads: "(a) Persons empowered to bring a civil action: A civil action may be brought--(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title . . . ."

14

plan. Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993) ("Russell therefore bars plaintiffs from suing under Section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."). Moreover, Plaintiffs cannot skirt the requirements of § 1132(a)(1)(B) by filing under § 1132(a)(2). See, e.g., Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc., 102 F.3d 712, 714 (4th Cir. 1996) ("To permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed every wrongful denial of benefits could be characterized as a breach of fiduciary duty . . . ."). Plaintiff's claim, to succeed, must be brought under § 1109, through § 1132(a)(2), to benefit the Plan.

But as discussed above, Plaintiff seeks recovery of damages for himself, not for the Plan. (See Compl. 8 (the "WHEREFORE" clause).) Thus Defendants are entitled to summary judgment on this claim.

C. Defendants' Counterclaims – Unjust Enrichment and Restitution

Defendants also ask this Court to grant summary judgment on their claim that Plaintiff was unjustly enriched, entitling them to restitution for any and all overpayments Plaintiff received.[8]

---

[8] In their Amended Answer and Counterclaim, Defendants also seek a declaratory judgment and injunctive relief. Because Defendants do not ask this Court for summary judgment on either of these claims, the Court will not address them.

For the reasons discussed below, summary judgment on this claim is DENIED.

To prevail on an unjust enrichment claim, Defendants must prove, (1) Plaintiff was enriched, (2) the enrichment came at Defendants' expense, and (3) Plaintiff's acceptance of the pension-benefit overpayments was "contrary to equity and good conscience." Schuster v. Dragone Classic Motor Cars, Inc., 98 F. Supp. 2d 441, 447-48 (S.D.N.Y. 2000). "A precondition to recovery based upon unjust enrichment is the lack of remedy by an action on the contract." Id. at 448; see also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 905 (2d Cir. 1997) ("under the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied contract 'to prevent one person who has obtained a benefit from another . . . from unjustly enriching himself at the other party's expense.' Such an agreement will not be implied, however, 'where there is a valid express agreement between the parties which explicitly covers the same specific subject matter for which the implied agreement is sought.'" (citation omitted)); 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:5 (4th ed. 2009) ("Where the plaintiff has no alternative right on an enforceable contract, the basis of the plaintiff's recovery is the unjust enrichment of the defendant.").

Defendants fail to prove, as a matter of law, that they lack an adequate remedy at law. The Plan provides for a method of

redress against overpaid pensioners: "If benefits are paid for any month for which they should have been suspended under this Section, the overpayment shall be recovered by deductions from future monthly benefit payments." (Defs' Ex. A, § V(F)(4)). Defendants have failed to establish, as a matter of law, that this remedy is inadequate. Thus, Defendants are not entitled to summary judgment on their unjust enrichment claim. And because this Court does not grant Defendants' summary judgment on their unjust enrichment claim, it need not decide whether they are entitled to the remedy of restitution.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part, and DENIES in part Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September   24  , 2009
         Central Islip, New York